IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| SEAN D. COOK | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | CIVIL CASE NO.: 8:13-cv-00882 |
| | * | |
| NATIONWIDE INSURANCE COMPANY, *et al.* | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY JOHN F.X. COSTELLO AS COUNSEL FOR PLAINTIFF

### I. INTRODUCTION

Nationwide Insurance Company, Nationwide Mutual Insurance Company, Nationwide General Insurance Company (hereinafter, collectively, "Nationwide Defendants"), Eric Hitzel ("Hitzel"), Andrew B. Greenspan ("Greenspan") and The Law Offices of Andrew B. Greenspan (hereinafter, collectively, the "Lawyer Defendants") do not take filing a motion to disqualify John F.X. Costello ("Costello") lightly. Indeed, the Defendants, though counsel, have alerted Costello of the disqualification issue prior to the filing of this Motion. However, because Costello has not withdrawn his appearance, the Defendants file this Motion.

The reason that the Defendants seek to disqualify Costello is simple—he is a witness on several issues which are critical to the Complaint which has been filed. In the instant action, Costello as counsel for Sean Cook ("Cook"), assignee of Antonio C. Alvarez ("Alvarez"), filed

suit against the Defendants for "Bad Faith/Negligence."[1] The Complaint alleges that because a Nationwide claims adjuster did not advise Costello of its insured's policy limits, that Costello was forced to file suit against Alvarez for injuries which Cook suffered in a motor vehicle action (the "Underlying Case"). The Complaint further alleges that Costello had settlement discussions with persons he describes as agents for Nationwide—and that Costello was demanding that Nationwide pay as part of the settlement, in addition to the policy limits, $21,000 costs he had incurred in the suit. The Complaint further alleges that Costello was told—by these supposed agents of Nationwide—that his demand was reasonable and should be accepted. When Costello's demand was not accepted and a counter-offer was made, the Complaint alleges why Costello and Cook rejected the proffered amount.

These and other facts demonstrate that Costello is a critical witness in this matter. He should know that he cannot be both witness and advocate. Because Costello has not chosen to relinquish his role as advocate when he is a witness, the Defendants bring this motion to disqualify him.

## II. FACTUAL BACKGROUND

On August 1, 2008, Cook and Alvarez were involved in an automobile accident (the "Accident"). Cook suffered serious injuries as a result of that Accident. At the time of the Accident, Alvarez was insured by Nationwide. His policy limits were $50,000. Complaint at ¶ 12.

---

[1] On May 6, 2013, Costello, on behalf of Cook, "filed" an untimely Amended Complaint, without the consent of the Defendants or the court's leave, as required by Fed.R.Civ.P. 15. Since the granting of leave to amend by the Court is required, there has been no service of the amended complaint as of this writing L.R.103 (6)a. Plaintiff also failed to file and serve a copy of the amended pleading delineating the stricken material and the new material as required by L.R. 103 (6)c. In that Amended Complaint, Plaintiff asserted claims for "bad/faith" (Count I), "negligence" (Count II) and "breach of contract" (Count III) against the Nationwide Defendants, and for "legal malpractice/negligence" (Count IV) and "breach of fiduciary duty" against the Lawyer Defendants and the Nationwide Defendants.

Approximately forty-five days after the Accident, Costello, on behalf of this client Cook, filed suit against Alvarez in the Circuit Court for Prince George's County for injuries allegedly sustained by him in the Accident. Costello alleges that the filing of this suit would not have been necessary if the insurer had advised him of the policy limits prior to his filing suit. Complaint at ¶¶ 7-16.

The Nationwide Defendants allegedly hired the Lawyer Defendants to represent Alvarez in the Underlying Case. Complaint at ¶ 19. Crucial conversations occurred on the first day of trial. As alleged in the Complaint, "on the first day of trial…[Cook], through counsel [Costello],[allegedly] advised [the Nationwide Defendants]…that Plaintiff would settle [the Underlying Case] for the policy limits of $50,000 plus $21,000 in trial costs incurred…." Complaint at ¶¶ 20, 21. The Complaint alleges that representations were made to Costello at the time this demand was made about the advisability of accepting the demand and what recommendations were to be made to Nationwide. The Complaint alleges that the representations were made by an "agent" of Nationwide that the demand should be accepted.. *Id.* Nevertheless, the Complaint advises that the Nationwide Defendants, through Hitzel and Greenspan, "rejected the demand to settle and made a counteroffer, [sic] to settle for the sum of [sic] $50,000 policy limits plus $4,000 in trial costs." Complaint at ¶ 23. Because he "could not accept it", Cook rejected the counteroffer "in light of the expenses he has incurred [by Costello] in the prosecution of [the Underlying Case]." Complaint at ¶ 24.

On June 22, 2010, a jury returned a verdict in favor of Cook against Alvarez in the amount of $892,050.52. Complaint at ¶ 25. Subsequently, Cook, again through Costello, was able to obtain an assignment of claim from Alvarez. As stated in the Complaint, Alvarez assigned "any and all rights he has against Nationwide Insurance Company and their attorneys,

3

Andrew B. Greenspan and/or Eric Hitzel." Complaint at ¶ 31. It is not known what discussions Costello had with Alvarez in order to procure the assignment for his client Cook.

Thus, it is clear that Costello is a critical witness on at least the following matters:

*Costello's discussions with Nationwide's claims adjusters prior to his filing suit for Cook.

*The reasons Costello and/or Cook felt it was necessary to file suit within forty-five days of the Accident, instead of allowing Nationwide an attempt to adjust the claim.

*The course and nature of the settlement demands and offers which were made during the adjustment of the claim, including the fact that Nationwide quickly made policy limit offers to Costello early and repeatedly.

* Costello's strategy in rejecting Nationwide's repeated offers of policy limits and making settlement demands. *Costello's conversation on the first day of trial with the person he calls a Nationwide agent.

*Costello's so-called costs that the Complaint states that he incurred.

*The reasons that the counter-offer was rejected.

*The nature of the representations and discussions that occurred between Alvarez and Costello regarding the assignment.

The Nationwide Defendants and the Lawyer Defendants have moved to disqualify Costello on the grounds that (1) it was, is and has always been patent that he is "likely to be a necessary witness" on behalf of the Plaintiff and, if not, on behalf of the Defendants; (2) Costello's filing of suit and the continued representation of Cook in this action is in direct contravention of Maryland Lawyer's Rule of Professional Conduct ("MLRPC") 3.7(a); (3) and there is a conflict of interest between Costello being a truthful witness and aggressive advocate.

### III. ARGUMENT

#### A. *An Attorney who is a critical information may not be both an advocate and a witness.*

The Maryland Lawyers Rules of Professional Conduct ("MLRPC") are clear that a lawyer cannot serve as both an advocate and a witness. MLRPC 3.7 and 1.7 provide as follows:

> *Rule 3.7. Lawyer as Witness.*
>
> *(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:*
>
> *(1) the testimony relates to an uncontested issue;*
>
> *(2) the testimony relates to the nature and value of legal services rendered in the case; or*
>
> *(3) disqualification of the lawyer would work substantial hardship on the client.*
>
> *(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.*
>
> *Rule 1.7. Conflict of Interest.*
>
> *(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if:*
> \* \* \*
> *(2) there is a significant risk that the representation of one or more clients will be materially limited by …a personal interest of the lawyer.*

The rationale for the prohibition was concisely articulated by Judge Thieme in *Kluptl. v. Krongard, et al.*, 126 Md. App. 179, 205-206 (1999), *cert. denied,* 355 Md. 612 (1999)as follows:

> *Rule 3.7* provides, in pertinent part, that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . ." MLRPC *Rule 3.7(a)*. The policy behind this rule is

succinctly stated in the Comment: "Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and the client." MLRPC *Rule 3.7* cmt. With regard to the mixing of roles, the Comment continues:

> The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

As indicated in *Klupt*, the prohibition applies whether the advocate is a necessary witness for his client or is to be called to testify against his client. As noted therein, "[c]ommentators have noted that the problem for the opposing party is most acute when the advocate is expected to testify *for* his client. If the opposing party, as in the present case, desires that the advocate testify *against* his client, the prejudice to the opposing party *may* be less, but that party still has grounds to complain." *Id.,* 126 Md. App. at 206. (Citations omitted; emphasis in the original).

The rule against a lawyer being both an advocate and a witness is well-founded. As indicated in *Moore's Federal Practice-Civil*, there are strong reasons for the rule, including the following:

- **Juror Confusion.** A frequently suggested rationale for the advocate-witness rule is that juries may become confused when the lawyer both testifies as to facts, and then argues the weight of the very evidence that he or she has provided. The lawyer is also put in the awkward position of arguing his or her own credibility, a situation exacerbated if the lawyer is called to present testimony that may be adverse to the client, thereby raising conflict of interest concerns. Courts concerned with a lawyer arguing his or her own credibility have captured this issue in variety of articulations: advocate-witness creates a "conflict in courtroom roles"; and "the bar is ill-served when an attorney's veracity becomes an issue in the case."

- **Protection of Client's Interests.** Some courts articulate the advocate-witness rule as grounded in protecting the interests of clients. The lawyer should not fail to present evidence favorable to the client to protect his or her position as

6

advocate. Some courts note that serving as both counsel and witness makes the lawyer more easily impeachable due to the lawyer's interest in the case and therefore a less effective or "objective" witness on behalf of the client. Because of this concern, in many cases lawyers voluntarily withdraw when it appears that the counsel is likely to be called a witness on behalf of the client.

- **Protection of Opposing Party's Interests.** Protecting the rights and interests of the opposing party is also a significant policy concern justifying the advocate-witness rule. Some courts have expressed concern that opposing counsel may be handicapped in cross-examining a witness who is also advocate for the opposing side.

- **Tainting the System.** Courts also rely on the more amorphous concern that permitting a lawyer to serve as both advocate and witness poses a danger of tainting the trial and the legal system generally. Sometimes this concern is articulated through the notion that it creates an appearance of impropriety or unfairness. …

*Moore's Federal Practice - Civil § 812.01 [2]* (Footnotes omitted).

Based upon the above, it is clear that this Court cannot permit Costello to serve as Cook's counsel if he has critical information which makes him a "necessary witness."

### B. *Costello's Is Likely to be a Necessary Witness*

Regardless of whether the lawyer testifies in person or by way of a stipulation, the lawyer that is a witness is "in the unseemly position of arguing his own credibility, notably in opening and closing statements." *Weigel v. Farmers Ins. Co., 158 S.W.3d 147, 153 (Ark. 2004).* A lawyer who is a witness will also have their credibility subjected to scrutiny in cross-examination,--whether being subjected to cross-examination himself or by having to cross-examine witnesses about his communications with them. *Id.*

Clearly, such situation exists in the instant case. Costello, himself, has relevant, material and critical information relating to this suit. Because Costello should have knowledge that his

7

testimony might be required, he has the burden of proving that he should remain as an advocate in this case. As stated in *Klupt*, supra, 126 Md.App. at 207-208, the Court held:

> When the attorney in question is so clearly aware before the fact of the potential conflict between his roles as advocate and witness, then the scrutiny usually applied to an opposing party's motion for disqualification is unnecessary, and the burden shifts to the attorney in question. "If the lawyer knows before the litigation has commenced that his or her testimony might be required, then the burden is on the lawyer to establish an exception to the Rule if he or she is to avoid disqualification." (Citations omitted).

The Defendants submit that Costello cannot meet this burden.

Certainly, Costello cannot meet this burden by arguing that he and/or his client may forgo calling him as a witness. As the Restatement of Law, Third, The Law Governing Lawyers §108, Cmt, e, in pertinent part, explains:

> [I]n certain circumstances a lawyer is a necessary witness and subject to the prohibition against advocacy, regardless of the lawyer's possible inclination not to testify.

Costello may attempt to meet this burden by suggesting that his testimony is immaterial. However, as stated in Restatement of Law, Third, The Law Governing Lawyers §108, Cmt, e:

> A lawyer's testimony is material within the meaning of the Subsection when a reasonable lawyer, viewing the circumstances objectively, would conclude that failure of the lawyer to testify would have a substantially adverse effect on the client's cause. The forensic value of evidence must be assessed in practical terms. If other evidence is significantly less probative or credible or the issue is critical and contested, the lawyer's testimony, although cumulative, may be of significant forensic value and thus material.

As discussed in detail below, Costello has placed himself at the heart of many of the factual issues in the Complaint. These include circumstances where he—and only he—would have knowledge of, including why the Complaint in the Underlying Case was filed 45 days after the Accident without waiting for Nationwide to adjust the claim, what his so-called costs consisted of, and why the counter-offer which was made was rejected. In addition, he has critical knowledge of the settlement conversations which occurred on the first day of trial and the circumstances under which the assignment was obtained. His testimony is both necessary and material to this case.

As stated by the Maryland Court of Special Appeals in *Klupt*, 126 Md. App. at 207:

> "… Among the factors courts have adopted when deciding motions for disqualification are the materiality of the advocate-witness's evidence; the exclusivity of the advocate-witness as the source of the evidence; and the prejudice to the advocate-witness's client."

Here, all such facts weigh heavily in favor of finding that Costello must be deemed as being prohibited from testifying. Costello's testimony will be required to prove/disprove many of the allegations of the Complaint in the instant case.

The following paragraphs of the Complaint clearly demonstrate that communications between Costello and either the Nationwide Defendants, their alleged agents, servants or employees and/or the Lawyer Defendants are critical to this case:

> 16. As a result of Nationwide's refusal to disclose Mr. Alvarez's policy limits, a civil suit was filed on behalf of Plaintiff against Mr. Alvarez (the insured) in the Circuit Court for Prince George's County, Maryland CAL 08-23751 on September 15, 2008.

The Defendants note that the Nationwide policy limits of $50,000 were disclosed and unconditionally offered to Costello on October 9, 2008. See Letter from Garner to Costello

dated October 9, 2008, a copy of which is attached as Exhibit 1. In addition, Costello will be required to testify as to why the suit was filed and this early offer was not accepted.

Costello's recommendations to his client, his client's responses, and Cook's and Costello's overall settlement strategy are very much in play in this case. As stated in the Complaint:

> 20. That on the first day of trial, the Defendants, Nationwide sent their duly authorized servant, agent and/or employee, on their behalf, to settle the matter with Plaintiff.

The agency of the person, identified in the so-called amended complaint as Jeffrey DeCaro, Esquire, is very much in dispute. The Nationwide Defendants and DeCaro deny that he was sent by Nationwide or that he was the "duly authorized servant, agent and/or employee of Nationwide." See DeCaro Affidavit, a copy of which is attached as Exhibit 2 at paragraph 6. Costello is a witness to this exchange and is, in the face of DeCaro's denial, required to testify to these matters. In addition, Costello will be required to examine DeCaro on a conversation he had with him, which will be limited, if not precluded, by the advocate-witness rule. Costello, as advocate, cannot put his credibility in issue by attempting to impeach DeCaro on the basis of alleged prior inconsistent statements allegedly made to him. MLRPC 3.7 and 1.7 (Costello's refusal to testify is in conflict with the best interests of his client.)

Costello would also be required to testify as to what he meant when he said he had $21,000 in costs. As stated in the Compliant:

> 21. Plaintiff, through counsel, advised the Defendants, Nationwide, through its designated representatives, expressly sent to settle the case, that the Plaintiff would settle for the policy limits of $50,000.00 plus $21,000.00 in trial costs incurred as a result of the necessity of filing suit and Nationwide's previous refusal to identify policy limits.

The Defendants have no idea what he meant by "trial costs," but as Costello now claims that those costs were within the insurance policy's contemplation such costs are vital.

In addition, Costello will be a critical witness on the issue of the nature and extent of his settlement authority from his client, his settlement strategy and his efforts to manufacture a bad faith case.

> 22. That Defendants Nationwide agent, advised that he thought that the demand to settle was fair, reasonable, and would recommend it to Nationwide Insurance Company.

DeCaro denies that he made any such statement. See, Exhibit 2 at paragraph 8. Costello must testify to prove the content of this conversation.

The Complaint also alleges:

> 23. That the Defendants Nationwide, through its duly authorized agents, Eric C. Hitzel and Andrew B. Greenspan, rejected the demand to settle and made a counteroffer, to settle for the sum of $50,000.00 policy limits plus $4,000.00 in trial costs.

Costello will, thus, be required to testify to the counter-offer, the relationship of the $4,000 to the actual costs incurred, and his communication of the offer to his client. As stated in the Complaint:

> 24. That the Plaintiff, Sean Cook did not and could not accept such offer in light of the expenses he had incurred in the prosecution of this matter, as a result of the Defendants' Nationwide's initial refusal to disclose its policy limits.

Costello's testimony of the expenses he incurred, the communication of the offer to his client, the reason for the rejection, and the reason for the absence of any counter-demand is essential.

Costello's testimony on these matters and, particularly, his testimony as to factual basis for the contention that the filing of the suit was the "result" of the alleged failure to disclose policy limits, the settlement negotiations between the Defendants and Costello between the date of the Accident and the trial, the presentation of settlement offers to his client, his authority to reject settlement demands, and Costello's authority to make the demand of $21,000 above the

policy limits, his settlement strategy, and the facts surrounding the Assignment are crucial to this case. The prejudice that would obtain to the defense from Costello attempting to prove these aspects of Cook's case from examination of the Defendants and their employees while Costello was not subject to examination by the Defendants is manifest. See *Weigel*, 158 S.W.3d at 153.

Moreover, the Defendants will establish that by written and oral communications between Costello and the Defendants and their representatives, settlement offers of policy limits were made to Costello prior to and during the trial of the case, all of which were rejected. See, for e.g. Exhibit 1. Costello, then, will likely be required to testify to rebut the testimony of the Defendants regarding the within limits offer or be called by the Defendants to establish the facts surrounding the rejection of the repeated offers.

Thus, Costello is plainly a necessary witness in this matter. It is equally clear that there are no exceptions to MLRPC 3.7 which would be applicable to this matter. Costello's testimony would not relate to an uncontested matter or to the value of legal services. As the case is at an early stage in this proceeding, disqualification would not work a "substantial hardship" on his client. Indeed, if Costello is not disqualified at this juncture, then his inevitable disqualification when he is required to testify at trial would result in a delay of the trial and would work a grave injustice upon the Defendants. See *Klupt*. 126 Md. App at 210.

The case law supports disqualification of Costello under the circumstances of this case. As indicated in *Robert Korfmann, et al. Respondents, v. Kemper National Insurance Company, Appellant*, 258 A.D.2d 508; 685 N.Y.S.2d 282; 1999 N.Y. App. Div. LEXIS 1009 (1999)—*a case remarkably similar to the instant case*-- the Court held that:

> At the heart of the instant litigation are certain negotiations conducted between the plaintiffs' attorney and the defendant insurance company. Since it is clear that the plaintiffs' attorney is an essential witness in this bad faith action and ought to be called

as a witness, it was an improvident exercise of discretion to deny the defendant's motion to disqualify counsel.

There, as in this case, the negotiations conducted between Costello and the Defendants are "[a]t the heart of the instant litigation."

Similarly, *Weigel v. Farmer's Insurance*, *158 S.W.3d 147*, involved the disqualification of counsel for the plaintiff in a case against a med-pay uninsured motorist coverage carrier for bad faith in refusing to release its claim so that the plaintiff insured in an automobile tort case could accept a $100,000 limits offer from the carrier for a tortfeasor. The jury returned a verdict in the amount of $5,000 and the plaintiff sought to recover from the carrier for, *inter alia*, bad faith, breach of contract and breach of fiduciary duty. The carrier sought to disqualify plaintiff's counsel, who had represented the plaintiff in the underlying tort case. In upholding the disqualification, the Court stated:

> The complaint reflects no less than four paragraphs describing conversations that "Plaintiff Weigel's attorney" had with the tortfeasor's attorney and with Farmers' claims supervisor:
>
> ****
>
> These oral conversations, especially those between Hatfield and Bamber, are the centerpiece of Appellant's claims, as pled in the complaint, and Farmers should be permitted to question Hatfield in order to respond to the allegations in the complaint. We agree with Farmers that its defense will be hampered if Hatfield is allowed to cross-examine its employees about the substance of those conversations, but Farmers is not, in turn, permitted to question Hatfield about them. We also agree that Hatfield is the only witness who can testify as to whether he was aware of the provisions of *section 23-89-209(c)*, whether he complied with them, and whether he considered taking a nonsuit or asking for a continuance to give Farmers additional time to investigate and evaluate the claim. **One court has concluded that an attorney's testimony about his strategy and what transpired during settlement negotiations was crucial to prove bad faith.** *See Warrilow v. Norrell, 791 S.W.2d 515 (Tex. Ct. App. 1989)*.

13

> It logically follows that such testimony may well be crucial to defend against a claim of bad faith.

*Id*., at 356 Ark. 626-628. (Emphasis supplied).

In *The Mutual Group U.S., v. Charles R. Higgins*, 259 Neb. 616; *611 N.W.2d 404*; *2000 Neb. LEXIS 127 (Ark. 2000)* a subrogated insurance carrier sued its insured for settling a case with a third-party tortfeasor and not reimbursing the carrier for the medical bills it had paid from the settlement proceeds. The insurer sought to disqualify the insured's counsel in the underlying case, who was representing the insured in the carrier's suit to recover its share of the settlement. The insurer claimed that it had notified the insured's counsel of its subrogated interest prior to the tort settlement; that counsel was therefore a necessary witness. The Court upheld the disqualification saying "[i]t is hard to imagine how this issue can be litigated without [the attorney] being a witness."

The Maryland state and federal courts have likewise disqualified counsel where it was likely that they were necessary witnesses. See for e.g., *Klupt*, 126 Md. App. 179 (Plaintiffs' attorney held to be in violation of MLRPC 3.7 when he had written a letter supporting the validity of a contract on behalf of another client which contract was the subject of the current action and was to be called as a witness by the current defendants to testify against his current client).

In *EEOC v. Bardon*, 2010 U.S. Dist. LEXIS 3980, 108 Fair Empl. Cas. (BNA) 552 the EEOC had filed suit against an employer for sex discrimination and retaliatory discharge. Judge Roger Titus of this Court, *sua sponte*, raised the question of whether employer's labor counsel, who had participated in the Defendant's internal investigation and in the decision to terminate the Plaintiff's employment could serve as trial counsel. He held that the advocate witness rule precluded his representation, stating:

> …[The company lawyer] is in a unique position to testify about [the internal investigation and the termination of employment]. While other individuals may be able to testify to fragmentary portions of Mr. Buchsbaum's investigation and his role in the firing, Mr. Buchsbaum is the *only* individual who can provide testimony encompassing the totality of his role in [the employee's] retaliatory discharge and the reasons for actions he took. [Citation omitted]His testimony will therefore be far from cumulative.

*Id*.

Judge Titus went on to also observe that:

> There is a high likelihood that [the lawyer's] name will be invoked by witnesses and that the jury will look to him for answers when he talks to witnesses as well as when he testifies himself. Consequently, if Mr. Buchsbaum is allowed to perform dual advocate-witness role, the jury will likely be confused and misled and the EEOC and Ms. Borell may face severe prejudice. While Mr. Buchsbaum's disqualification will undoubtedly cause his client hardship, it is not substantial enough to outweigh the Court's concerns about the jury being confused and misled and about the prejudice to the EEOC and Ms. Borell.

Based upon the above, it is clear that Costello should not be allowed to continue as an advocate in this case. His appearance as counsel is violative of the Maryland Lawyers Rules of Professional Conduct. This Court should find that he is disqualified under MLRPC 3.7 and 1.7 [2]

---

[2] Costello's appearance as counsel for Plaintiff also raises serious MLRPC 1.7 conflict of interest issues. To the extent that Costello's testimony is favorable, necessary and critical to Plaintiff's case, his representation and attendant inability to testify would be in conflict with the interests of his client to have the best evidence available, *Moore's Federal Practice-Civil* §812.03 [2] ("Once the advocate's testimony has risen to the heightened level of relevance and necessity… an actual conflict of interest may have arisen between the lawyer's desire to] remain as counsel to] obtain legal fees and the client's needs to have the best evidence presented.") MLRPC 3.7; 1.7. To the extent that Costello's testimony was adverse or ambivalent to his client's cause, there would be a conflict of interest under MLRPC 1.7. *Klupt*, 126 Md. App. at 209-210, 2010 ("A lawyer's interest in testifying truthfully but adversely to his client must inherently conflict with the client's own interests." "If the lawyer (or a member of his firm) must give testimony that is either adverse or ambivalent with respect to the client's cause, the cause may be damaged.").

## IV. CONCLUSION

For all of the reasons set forth above, Defendants respectfully submit that the Motion to Disqualify should be granted.

_____/s/_____
Patricia McHugh Lambert
Federal Bar No.: 02539
Email: plambert@pklaw.com
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 400
Towson, Maryland 21204
410-938-8800
410-832-5600 (fax)

_____/s/_____
Kambon R. Williams
Federal Bar No.: 29872
Email: kwilliams@pklaw.com
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 400
Towson, Maryland 21204
410-938-8800
410-832-5600 (fax)
***Counsel for Defendants***