**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|                                          |     |                              |
| ---------------------------------------- | --- | ---------------------------- |
| SEAN D. COOK,                            | *   |                              |
|     Plaintiff,                           | *   |                              |
| v.                                       | *   | Case No.: PWG-13-882         |
| NATIONWIDE INSURANCE COMPANY,<br>*et al.*, | *   |                              |
|     Defendants.                          | *   |                              |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This Memorandum Opinion addresses:

(1) Defendants' Motion to Dismiss the Complaint filed by Defendants Nationwide Insurance Company, Nationwide Mutual Insurance Company, Nationwide General Insurance Company, Eric C. Hitzel, Andrew B. Greenspan, and the Law Offices of Andrew B. Greenspan, ECF No. 7, and supporting Memorandum ("Defs.' Dismissal Mem."), ECF No. 7-1; Plaintiff Sean D. Cook's Opposition, ECF No. 16, and supporting Memorandum ("Pl.'s Dismissal Opp'n Mem."), ECF No. 16-1; and Defendants' Reply ("Defs.' Dismissal Reply"), ECF No. 22;

(2) Plaintiff's Motion to Remand, ECF No. 11, and supporting Memorandum ("Pl.'s Remand Mem."), ECF No. 11-1, and Defendants' Opposition ("Defs.' Remand Opp'n"), ECF No. 19;

(3) Defendants' Motion to Strike Plaintiff's Amended Complaint, ECF No. 18; Plaintiff's Opposition, ECF No. 23; and Defendants' Reply, ECF No. 30;

(4) Plaintiff's Motion for Leave to File Amended Complaint, ECF No. 24, and supporting Memorandum ("Pl.'s Am. Mem."), ECF No. 24-1, and Defendants' Opposition ("Defs.' Am. Opp'n"), ECF No. 29;

(5) Plaintiff's Motion for Leave to File a Surreply to Defendants' Supplemental Memorandum in Support of Motion to Dismiss, ECF No. 28, and supporting Memorandum ("Pl.'s Surreply Mem."), ECF No. 28-1, and Defendants' Opposition, ECF No. 31; and

(6) Defendants' Motion for Leave to File an Amended Notice of Removal in Light of Plaintiff's Request to Amend Complaint, ECF No. 35.[1]

A hearing is not necessary. *See* Loc. R. 105.6. For the reasons stated herein, Defendants' Motion to Dismiss the Complaint is GRANTED with respect to the Attorney Defendants and the Law Office, and is otherwise DENIED without prejudice; Plaintiff's Motion to Remand is DENIED; Defendants' Motion to Strike Plaintiff's Amended Complaint is GRANTED; Plaintiff's Motion for Leave to File Amended Complaint is GRANTED with respect to Count I only and otherwise DENIED; Plaintiff's Motion for Leave to File a Surreply to Defendants' Supplemental Memorandum in Support of Motion to Dismiss is DENIED; and Defendants' Motion for Leave to File an Amended Notice of Removal in Light of Plaintiff's Request to Amend Complaint is DENIED as moot.

## I.    BACKGROUND

For purposes of resolving the dizzying array of pending motions, this Court accepts the facts Plaintiff alleged in his initial Complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th

---

[1] Although Plaintiff's Motion for Leave to File an Amended Notice of Removal is not yet briefed fully, it is mooted by this opinion and therefore is DENIED as moot.

Cir. 2011). Plaintiff alleges several claims in connection with the Defendants' role in the 2010

trial of an automobile tort in Maryland state court. In the underlying car accident, Antonio

Alvarez was driving while intoxicated and on a suspended license when he negligently collided

with the car of Plaintiff Sean Cook. Compl. ¶¶ 7-9, ECF No. 2. At that time, Alvarez was

insured by any or all of Defendants Nationwide Insurance Company ("Nationwide Insurance"),

Nationwide Mutual Insurance Company ("Nationwide Mutual"), and Nationwide General

Insurance Company ("Nationwide General," and, together with Nationwide Insurance and

Nationwide Mutual, "Nationwide").[2] *Id.* ¶ 12. Plaintiff sustained considerable injuries and, after

attempts to obtain compensation from Nationwide without litigation, Plaintiff brought a civil suit

against Alvarez in the Circuit Court for Prince George's County, Maryland. *Id.* ¶¶ 17, 19.

Nationwide retained Defendants Eric Hitzel and Andrew Greenspan (the "Attorney

Defendants") to represent Alvarez and trial commenced on June 21, 2010.[3] On the first day of

trial, Nationwide "sent their duly authorized servant, agent and/or employee, on their behalf, to

settle the matter with Plaintiff."[4] *Id.* ¶ 20. Plaintiff offered to settle the case for $71,000, an

---

[2] It is not clear from the Complaint which entity actually insured Alvarez or what the relationship is among the Nationwide entities. *See* Compl. ¶¶ 2, 12.

[3] Defendants claim that the Law Offices of Andrew B. Greenspan ("Law Office") "is not a separately incorporated legal entity," but is, instead, a division of Nationwide. Notice of Removal ¶ 4.D, ECF No. 1. This is not fatal to Plaintiff's claims against the Law Office at this stage. *See* Md. Rule 2-304(a); Fed. R. Civ. P. 9(a)(1). Further, because the original Complaint does not allege that the Law Office was retained as a firm by Nationwide, *see* Compl., and no amendment provides an independent basis for the Law Office's liability, the nature or capacity of the Law Office is not material to deciding any of the pending motions.

[4] The original Complaint does not allege that this "servant, agent and/or employee" was either of the Attorney Defendants, *see* Compl. ¶ 20, and the Second Amended Complaint alleges that it was another attorney, Jeffrey DeCaro, who is not named in this lawsuit. Second Am. Compl. ¶ 21, ECF No. 24-3.

amount calculated as the $50,000 policy limit on Alvarez's insurance "plus $21,000.00 in trial costs incurred as a result of the necessity of filing suit and Nationwide's previous refusal to identify policy limits." *Id.* ¶ 21. Nationwide's agent indicated that he thought the demand was fair and reasonable and that he would recommend it to Nationwide. *Id.* ¶ 22. However, the Attorney Defendants subsequently informed Plaintiff that Nationwide had rejected the settlement offer and made a counteroffer of the $50,000 policy limit plus $4,000 in trial costs. *Id.* ¶ 23. Plaintiff rejected this offer and no settlement was reached. *Id.* ¶¶ 24-25.

Trial was completed on June 22, 2010 when a judgment was returned against Alvarez in the amount of $892,050.52. *Id.* ¶ 25. Since then, Alvarez has executed an assignment to Plaintiff "of any and all rights he has against [Nationwide and the Attorney Defendants], of any and all claims that he has against them as a result of actions" alleged in the Complaint. *Id.* ¶ 31.

Pursuant to the assignment, Plaintiff filed suit against Nationwide, the Attorney Defendants, and the Law Office in the Circuit Court for Prince George's County Maryland on February 19, 2013, asserting one count of "Bad Faith/Negligence" against all Defendants. *Id.* at 3. Defendants removed the case to this Court by Notice of Removal filed on March 22, 2013, pursuant to 28 U.S.C. §§ 1441(b) and 1446. Although it is undisputed that both Plaintiff and the Attorney Defendants are citizens of the State of Maryland, Defendants argue that this case is removable under this Court's diversity jurisdiction, 28 U.S.C. § 1332(a)(1), because the Attorney Defendants were fraudulently joined. Notice of Removal ¶¶ 4.A-C, 8. Defendants also moved to dismiss on March 29, 2013.

Plaintiff responded by filing a motion to remand the case to state court on April 19, 2013 and filed an Amended Complaint (the "First Amended Complaint"), ECF No. 14, on May 6,

2013, thirty-eight days after Defendants moved to dismiss. On May 20, 2013, Defendants moved to strike the First Amended Complaint as untimely under Fed. R. Civ. P. 15(a). On June 6, 2013, Plaintiff filed a Motion for Leave to File Amended Complaint, which attached a complaint (the "Second Amended Complaint") that appears to differ from both the original Complaint and the First Amended Complaint. *See* Second Am. Compl., ECF No. 24-3. Apparently in response to Plaintiff's motion to amend his complaint, Defendants filed a motion for leave to file a surreply to Plaintiff's motion to dismiss on June 21, 2013, and a motion for leave to file an amended notice of removal on August 8, 2013.[5]

## II. STANDARD OF REVIEW

As a threshold question, this Court first must consider Plaintiff's motion to remand the case because it implicates the Court's subject matter jurisdiction. "'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 513 (1868)).

If, and only if, this Court holds that the motion to remand should be denied, it then can turn its attention to determining which is the operative complaint and addressing Defendants' motion to dismiss.

---

[5] There also is a motion pending to disqualify Plaintiff's counsel, ECF No. 21, which is not addressed in this Memorandum Opinion.

## A. Motion to Remand

Under 28 U.S.C. § 1332(a), federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States." When a plaintiff files such an action in state court, the action "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Diversity jurisdiction "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Further, even an action that normally would fall under this Court's diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which the action is brought." 28 U.S.C. § 1441(b)(2). Whether removal is proper must "be determined according to the plaintiffs' pleading at the time of the petition for removal." *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939).

Under some circumstances, "[t]he 'fraudulent joinder' doctrine permits removal when a non-diverse party is (or has been) a defendant in the case." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). As Judge Nickerson recently explained in *Barlow v. John Crane Houdaille, Inc.*, Civ. No. WMN-12-1780, 2012 WL 5388883, at *2 (D. Md. Nov. 1, 2012):

> Defendants opposing remand, when removal was based on the doctrine of fraudulent joinder, carry a very heavy burden. *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999). The defendant must show either that (1) there has been outright fraud in the plaintiff's pleading, or (2) "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Id.* (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)).

This is a high bar to clear and, to defeat removal based on the doctrine of fraudulent joinder, a plaintiff need only show a "glimmer of hope" or "a slight possibility of a right to relief." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999).

### B. Amending the Complaint

Under Fed. R. Civ. P. 15(a), "[a] party may amend its pleading once as a matter of course" either twenty-one days after serving it or within twenty-one days after service of a responsive pleading or a motion under Fed. R. Civ. P. 12(b), (e), or (f). Fed. R. Civ. P. 15(a). Thereafter, amending a pleading requires "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires," *id.*, and should deny leave to amend only if amendment "would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility," *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating that the court also may deny leave if the plaintiff has amended more than once already without curing the deficiencies in the complaint); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) ("Delay alone . . . is an insufficient reason to deny the plaintiff's motion to amend."). Otherwise, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief" and the plaintiff moves to amend, the Court should grant the motion to give the plaintiff "opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.

Determining whether amendment would be futile does not involve "'an evaluation of the underlying merits of the case.'" *MTB Servs.*, 2013 WL 1819944, at *3 (quoting *Next Generation Grp. v. Sylvan Learning Ctrs., LLC.*, No. CCB–11–0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012)). Rather, "the merits of the litigation" are relevant to the Court's ruling on a motion for

7

leave to amend only if "a proposed amendment may clearly be seen to be futile," *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), such as "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards," *Katyle v. Penn Nat'l Gaming Inc.*, 637 F.3d 462, 471 (4th Cir. 2011); *see MTB Servs.*, 2013 WL 1819944, at *3.

## C. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

"Matters outside of the pleadings are generally not considered in ruling on a Rule 12 motion." *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012). However, "when a

defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (emendations in original)).

## III. DISCUSSION

### A. Plaintiff's Motion to Remand

Plaintiff argues that this Court lacks subject-matter jurisdiction over this case because he has asserted claims over Maryland defendants. For the reasons stated herein, I find that Plaintiff has not stated any colorable claims against any non-diverse defendants, that this Court has jurisdiction, and that Plaintiff's motion to remand must be DENIED.

### 1. Plaintiff's "Bad Faith/Negligence" Claim Against the Attorney Defendants

It is undisputed that Plaintiff is a citizen of Maryland, as are Defendants Hitzel and Greenspan (the "Attorney Defendants"). Compl. ¶¶ 1-4. Nevertheless, Defendants argue that the Attorney Defendants have been fraudulently joined, and therefore removal is proper. Defendants do not allege outright fraud, but rather assert that "the plaintiff has no possibility of recovering against a non-diverse defendant for the claim alleged." Notice of Removal ¶ 8. As explained *supra*, at 6, the Court must "look at the original complaint[] rather than the amended complaints in determining whether removal was proper." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 443 (4th Cir. 2005).

The original complaint purports to allege a single count of "Bad Faith/Negligence" against the Nationwide Defendants, the Attorney Defendants, and the Law Office. Compl. 3. It

is by no means self-evident that Plaintiff's conclusory allegation "[t]hat the Defendants Nationwide, individually and through their employees, including but not limited to Eric C. Hitzel, and Andrew B. Greenspan, negligently failed to exercise good faith in the resolution of the claim against their insured and client," *id.* ¶ 28, has alleged bad faith on the part of the Attorney Defendants.  But even giving Plaintiff the benefit of every favorable inference, he clearly has not shown even "a slight possibility" that he has a bad faith claim against the Attorney Defendants.

"It is well-settled Maryland law that an insured has a cause of action *against its insurance company* for bad faith refusal to settle a claim within policy limits." *Fireman's Fund Ins. Co. v. Continental Ins. Co.*, 519 A.2d 202, 204 (Md. 1987) (citing *State Farm Mut. Auto. Ins. Co. v. White*, 248 A.269 (Md. 1967) (emphasis added)).  In *White*, the Court of Appeals explained:

> [T]he presence of one or more of the following acts or circumstances may affect the "good faith" posture of the insurer: the severity of the plaintiff's injuries giving rise to the likelihood of a verdict greatly in excess of the policy limits; lack of proper and adequate investigation of the circumstances surrounding the accident; lack of skillful evaluation of plaintiff's disability; failure of the insurer to inform the insured of a compromise offer within or near the policy limits; pressure by the insurer on the insured to make a contribution towards a compromise settlement within the policy limits, as an inducement to settlement by the insurer; and actions which demonstrate a greater concern for the insurer's monetary interests than the financial risk attendant to the insured's predicament.

236 A.2d at 273 (citations omitted).  But crucially,

> [i]t is when the insurer undertakes to provide a defense that it has "the exclusive control . . . of . . . settlement and defense of any claim or suit against the insured," and it is at this stage that the "potential, if not actual, conflict of interest giving rise to a fiduciary duty" comes into being.

*Mesmer v. Md. Auto. Ins. Fund*, 725 A.2d 1053, 1063 (Md. 1999) (quoting *Sweeten, Adm'r v. Nat'l Mut. Ins. Co. of D.C.*, 194 A.2d 817, 818 (Md. 1963) (ellipses in original)).

This Court has found no Maryland case expressly addressing whether a bad faith claim may be asserted against the attorneys retained by an insurer to defend an insured, as distinct from bringing it against the insurer, and counsel has pointed to none. *See* Notice of Removal ¶¶ 6-7; Remand Mem. 5; Defs.' Remand Opp'n 14-16. But insofar as the insurer's obligations arise out of its "exclusive control . . . of . . . settlement and defense," *see Mesmer*, 725 A.2d at 1063, it is plain that Plaintiff has no claim against the Attorney Defendants. The Complaint does not allege that the Attorney Defendants were even aware of the initial, $71,000 settlement offer until after Nationwide had decided to reject it. *See* Compl. ¶¶ 20-23. The Complaint alleges that the offer was conveyed to Nationwide for consideration, *see id.* ¶ 22, and that *Nationwide*, not the Attorney Defendants, rejected the settlement offer and made the $54,000 counter-offer. *Id.* ¶ 23. Nowhere does the Complaint allege that the Attorney Defendants had control over any decisions as to whether to settle Plaintiff's claims, much less that they had authority to do so.[6]

In light of the allegations in the Complaint, there is no need to consider the larger legal question of whether a bad faith claim ever can be brought against a party other than the insurer. Plaintiff's failure to allege any facts showing that the Attorney Defendants had control over settlement negotiations means that he cannot possibly maintain a claim against the Attorney Defendants. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

---

[6] To the contrary, the Attorney Defendants normally would lack such authority if they observed the Maryland Rules of Professional Conduct, which provide that "[a] lawyer shall abide by a client's decision whether to settle a matter." Md. Rules of Prof'l Conduct 1.2(a).

## 2. Plaintiff's Legal Malpractice Claim Against the Attorney Defendants

Plaintiff attempts to save his motion to remand by asserting that, in fact, his "complaint clearly alleges that he is bringing a negligent [*sic*] action against Mr. Alvarez's former attorneys, Hitzel/Greenspan." Pl.'s Remand Mem. 6. Defendants argue that this is not permitted under Maryland Rule 2-303, which requires "each cause of action [to] be set forth in a separately numbered count." Defs.' Remand Opp'n 9. Defendants' reliance on Maryland procedural law in this context is incorrect.

Fed. R. Civ. P. 81(c) provides that the Federal Rules "apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c)(1). Once an action is removed, the complaint should be construed under the liberal pleading requirements of the Federal Rules. *Henderson v. Food Lion, Inc.*, 922 F.2d 835, 1991 WL 644 at *2 (4th Cir. 1991); *see also Frank B. Hall Co., Inc. v. Rushmore Ins. Co., Ltd.*, 92 F.R.D. 743, 745 (S.D.N.Y. 1981) ("After removal . . . federal courts will accept, as operative, papers served in state court which satisfy the notice-giving function of pleadings under the Federal Rules of Civil Procedure."). *But see Cannon v. Kroger Co.*, 837 F.2d 660, 664 (4th Cir. 1988) ("The federal rules governing pleadings [] are not applied after removal to disqualify or otherwise penalize litigants whose pleadings satisfied state requirements."). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this standard, the Court must analyze whether Plaintiff has stated a claim for negligence.

Plaintiff's claim for "negligence" against the Attorney Defendants sounds in malpractice. *See Flaherty v. Weinberg*, 493 A.2d 618, 627 (Md. 1985) (negligence is "a theory of recovery that traditionally arises in the professional malpractice context"). "[A] prerequisite for maintaining a negligence action against an attorney is that the plaintiff establish an employment

relationship between himself and the attorney." *Id.*; *see also Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 773 (D. Md. 2004) ("In Maryland, and attorney 'only owes a duty to his clients or third party beneficiaries of the attorney-client relationship.'" (quoting *Schatz v. Rosenberg*, 943 F.2d 485, 492 (4th Cir. 1991)).[7]  Plaintiff never retained the Attorney Defendants, but alleges that he may assert a malpractice claim standing in the shoes of Alvarez, who has assigned any such claims to Plaintiff.  Compl. ¶ 31.

Although "[i]n Maryland it has long been held that a chose in action may be validly assigned," *Med. Mut. Liability Ins. Soc. of Md. v. Evans*, 622 A.2d 103, 116 (Md. 1993), this never has been held true in malpractice actions.  Rather, "[a]n attorney . . . 'is liable for his negligence . . . to his immediate employer only, *and not to the latter's assigns* or any third person, between whom and the attorney there is no privity.'"  *Clagett v. Dacy*, 420 A.2d 1285, 1288 (Md. Ct. Spec. App. 1980) (quoting *Md. Cas. Co. v. Price*, 231 F. 397 (4th Cir. 1916) (emphasis added)).  Indeed, the seminal case on the matter, *Goodley v. Wank & Wank, Inc.*, held that in California a malpractice claim may not be assigned because to find otherwise "would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers."  62 Cal. App. 3d 389, 397 (Cal. Ct. App. 1976).  Particularly appropriate here, the *Goodley* court noted

> the ever present threat of assignment and the possibility that ultimately the attorney may be confronted with the necessity of defending himself against the assignee of an irresponsible client who, because of dissatisfaction with legal services rendered and out of resentment and/or for monetary gain, has discounted a purported claim for malpractice by assigning the same.

---

[7] There is no conceivable argument that Plaintiff was an intended beneficiary of his adversary's attorney–client relationship.

13

*Id.* at 397-98.

Although the Maryland Court of Appeals has not considered the matter expressly in recent years, its opinion in *Noble v. Bruce* highlighted the justifications for requiring strict privity, employing similar reasoning to the *Goodley* court: "Adopting a new rule that would subject an attorney to liability to disappointed beneficiaries [of a will] interferes with the attorney's ability to fulfill his or her duty of loyalty to the client and compromises the attorney's ability to represent the client zealously." 709 A.2d 1264, 1277 (Md. 1998). An attorney's loyalty would be compromised even more severely if she were at risk of an assigned malpractice claim brought by her former adversary. "The strict privity rule also protects attorney–client confidentiality." *Id.* at 1278. In order to defend themselves against Plaintiff's claims, the Attorney Defendants may be required to divulge confidential information that Alvarez never would have wanted revealed. *Id.*

Accordingly, the assignment of Alvarez's claim for legal malpractice is invalid as a matter of law and cannot support a claim against the Attorney Defendants.

### 3. Plaintiff's Claims Against the Law Office

The only fact that Plaintiff has alleged with respect to the Law Office is that it is the "employer" of the Attorney Defendants. Compl. 3. Plaintiff has alleged no facts about the Law Office's involvement in the case, and has not even alleged that the Law Office was retained by Nationwide or Alvarez. *See* Compl. Accordingly, it appears that any claim against the Law Office must be based on vicarious liability for the actions of the Attorney Defendants under the doctrine of *respondeat superior.* "Because that liability is derivative, however, recovery may not be had against the entity if the employee is not found to be liable . . . ." *DiPino v. Davis*, 729

A.2d 354, 370 (Md. 1999).  Having held that no possible claim has been pleaded against the Attorney Defendants, the same conclusion applies with respect to the Law Office.  *See id.*

### 4. This Court Has Jurisdiction

Because Plaintiff's purported claims against the Attorney Defendants and the Law Office do not demonstrate even "a slight possibility of a right to relief," *Hartley*, 187 F.3d at 426, those defendants may be considered fraudulently joined for jurisdictional purposes.  *See Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999).  The only remaining claims are against Nationwide, which undisputedly is an Ohio corporation with its principal place of business in Ohio.  Notice of Removal ¶ 4.B; Pl.'s Remand Mem. 2.  And Plaintiff seeks damages in the amount of $1 million.  Compl. 9.  As such, this case falls under this Court's jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), and is removable under 28 U.S.C. § 1441(b).  The motion to remand therefore is DENIED.

In light of the foregoing, Defendants' Motion for Leave to File an Amended Notice of Removal in Light of Plaintiff's Request to Amend Complaint is DENIED as moot.

### B. Determining the Operative Complaint

Having established that this Court has subject-matter jurisdiction over this case, this Court must now determine what constitutes the operative complaint.

Plaintiff originally filed this case in state court on February 19, 2013, Compl., and served Defendants on February 22, 2013.  Notice of Removal ¶ 1.  The Complaint was filed with this Court when the case was removed on March 22, 2013.  Defendants filed a Motion to Dismiss the Complaint on March 29, 2013.

Subsequently, Plaintiff has sought to amend his complaint on two separate occasions. Plaintiff filed his First Amended Complaint on May 6, 2013, thirty-eight days after Defendants'

motion to dismiss.  That complaint is the subject of a motion to strike filed on May 20, 2013.

*See* Fed. R. Civ. P. 15(a) (allowing amendment as a matter of course within twenty-one days

after service of a motion under Fed. R. Civ. P. 12(b) and by consent or leave of the court

thereafter).  Thereafter, Plaintiff filed a Motion for Leave to File Amended Complaint, attaching

the Second Amended Complaint, which appears to be substantially similar, but not identical, to

the First Amended Complaint.  Defendant filed an opposition to this motion on June 19, 2013,

and the time has now expired for Plaintiff to file a reply.  *See* Loc. R. 105.2.a.  In light of

Plaintiff's motion for leave to file a second amended complaint, Defendants' motion to strike the

First Amended Complaint is GRANTED summarily and this Court will consider the propriety of

accepting the Second Amended Complaint as an amendment to the original Complaint.[8]

Expressly declining to "cite a long litany of cases" (or any, for that matter), Plaintiff rests

his motion for amendment solely on the grounds that Rule 15 calls for leave to amend to be

"freely grant[ed]."  Pl.'s Am. Mem. 2.  *But see* Loc. R. 105.1 (requiring that "[a]ny motion . . .

be accompanied by a memorandum setting forth the reasoning and authorities in support of it").

Defendants argue that Plaintiff should be denied leave to amend simply because his motion is

untimely.   "Delay alone, however, is an insufficient reason to deny the plaintiff's motion to

amend."  *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).[9]  Nor have Defendants properly

---

[8] In light of the similarities between the first and second amended complaints, Defendants'
motion to strike and Plaintiff's motion for leave to amend present nearly identical issues.

[9] In resting their argument on a single case from the United States District Court for the District
of Utah, *see* Defs.' Am. Opp'n 6 (citing *Hakes v. Centennial Bank, Inc.*, 2011 WL 2014862, at
*1 (D. Utah May 23, 2011)), Defendants appear to have missed the existence of binding Fourth
Circuit precedent directly on point.   While Defendants' omission likely is inadvertent,
Defendants' counsel is advised to be cautious in future filings in this Court to avoid the

alleged prejudice as a result of the amendment. *See id.* ("An amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 616, 613 (4th Cir. 1980))).

However, as Defendants correctly note, amendment should be denied where it would be futile. *See* Defs.' Am. Opp'n 1-2. The Second Amended Complaint purports to state five counts against various Defendants: Count I, "Bad Faith/Negligence/Nationwide Defendants"; Count II, "Negligence"; and Count III, "Breach of Contract," are alleged only against Nationwide. Count V,[10] "Legal Malpractice/Negligence," and Count VI, "Breach of Fiduciary Duty," appear to name all Defendants but allege facts specific to the Attorney Defendants. Second Am. Compl.

First, Counts V and VI both plainly fail to state a claim and are futile. Count V alleges legal malpractice, which, as discussed *supra*, is not assignable under Maryland law and therefore cannot be asserted by Plaintiff. Similarly, Count VI alleges, in essence, that the Attorney Defendants breached fiduciary duties to Alvarez because they had a conflict of interest between Nationwide as their employer and Alvarez as their client, Second Am. Compl. ¶ 61, and they did not inform Alvarez of Plaintiff's $71,000 settlement demand or of their conflict, *id.* ¶¶ 62-63. These fiduciary duties are no different from those owed by attorneys to their clients, *see id.* ¶ 59, and therefore sound in legal malpractice. As such, Plaintiff cannot assert this claim no matter what label he puts on it. *See Bierman v. United Farm Family Ins. Co.*, No. RDB-12-2445, 2013 WL 1897781, at *7 (D. Md. May 6, 2013) (dismissing claim for negligent misrepresentation

---

perception that such an omission was committed knowingly. *See* Md. Rule of Prof'l Conduct 3.3(a)(3).

[10] The Second Amended Complaint omits a Count IV.

where it repeated claim for breach of contract). Further, it appears that the only basis for asserting this claim against Nationwide is through vicarious liability for the actions of the Attorney Defendants. *Id.* ¶ 60. As discussed *supra*, this claim cannot be brought in the absence of a valid claim against the Attorney Defendants.

With respect to Nationwide, Plaintiff has attempted to diversify his theories of liability and now alleges three counts: "Bad Faith/Negligence," "Negligence," and "Breach of Contract." All three of these claims set forth nearly identical allegations, and all sound in Plaintiff's original claim for insurer's bad faith.

In his separate claim for negligence, Plaintiff alleges, in essence, that Nationwide negligently failed to settle within policy limits. *See* Second Am. Compl. ¶¶ 40-41. This merely echoes Plaintiff's bad-faith claim (which, incidentally, also alleges negligence). *See Sweetin v. Nat'l Mut. Ins. Co. of D.C.*, 194 A.2d 817, 818 (Md. 1963) (declining to state whether the relevant tort sounded in negligence or bad faith, and noting that there may be no practical difference between the two theories). Even more telling, the duties allegedly breached by Nationwide include:

> A. Assessing the severity of Plaintiff's injuries giving rise to the likelihood of a verdict greatly in excess of the policy limits.
> B. Proper and adequate investigation of the circumstances surrounding the accident.
> C. Skillful evaluation of Plaintiff's disability.
> D. Informing the insured of a compromise offer within or near the policy limits.
> E. Refraining from pressuring the insured to make a contribution towards a compromised settlement within policy limits.
> F. Following the recommendations of their agents, servants and employees, including but not limited to Jeffrey R. DeCaro who recommended to them that they settle the claim for $50,000 in liability payments, plus $21,000 in costs and expenses covered under the aforesaid policy of insurance.

Second Am. Compl. ¶ 40.

This list is remarkable in that, except for the last item, it parrots the factors relevant to an insurer bad faith claim provided in *State Farm v. White* almost word-for-word, including:

> *the severity of the plaintiff's injuries giving rise to the likelihood of a verdict greatly in excess of the policy limits*; lack *of proper and adequate investigation of the circumstances surrounding the accident*; *lack of skillful evaluation of plaintiff's disability*; failure of the insurer to *inform the insured of a compromise offer within or near the policy limits*; [and] *pressure by the insurer on the insured to make a contribution towards a compromise settlement within the policy limits*, as an inducement to settlement by the insurer.

236 A.2d at 273 (emphases added) (citations omitted).  This is duplicative of Plaintiff's claim for "Bad Faith/Negligence," and there is no reason to allow amendment for the purposes of adding a redundant claim.

Plaintiff's purported claim for breach of contract suffers from the same defect.  The allegations that purport to state a claim for the breach of Defendants' duty of good faith and fair dealing, *see* Second Am. Compl. ¶¶ 47, 48, once again restate Plaintiff's claim for bad faith. Plaintiff has not alleged any provision of the insurance policy that was breached and, again, simply has lifted his list of unfulfilled duties from the text of the Maryland Court of Appeals' opinion in *White*.  *See id.* ¶¶ 47.A-E.[11]  Merely couching his bad faith claim as a breach of

---

[11] Even had Plaintiff's claim for breach of contract not merely restated his bad faith claim, Plaintiff's "Breach of Contract" claim actually alleges a breach of the covenant of good faith and fair dealing, which is not recognized as an independent cause of action in Maryland.  *See Thompson v. Naval Acad. Athletic Ass'n*, No. RDB-12-2676, 2013 WL 3965100, at *7 (D. Md. Aug. 1, 2013); *see also Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961) ("The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.").  "Instead, the duty of good faith and fair dealing is 'merely part of an action for breach of contract.'"  *Thompson*, 2013 WL 3965100, at *7 (quoting *Barry v. EMC Mortg.*, No. DKC-10-3120, 2011 WL 2669436, at *7 (D. Md. July 6, 2011)).  Because the insurance policy is, by its terms, not assignable, *see* Ins. Policy 4, Defs.' Mot. to Dismiss Ex. 1, ECF No. 7-2, it is dubious that Plaintiff could maintain a traditional breach of contract claim in any event.

contract claim is insufficient to state a claim for breach of contract. *See Bierman*, 2013 WL 1897781, at *7.

However, in seeking to amend Count I, Plaintiff does add several meaningful allegations with respect to Nationwide's obligations under the policy. Specifically, Plaintiff now alleges, *inter alia*, that Alvarez's policy with Nationwide obligated Nationwide to "pay all *costs and expenses* incurred, plus policy limits with respect to liability," Second Am. Compl. ¶ 13 (emphasis added), that Nationwide "had the authority to pay the $21,000.00 in trial costs either as an expense or as a cost under the policy," *id.* ¶ 25, and that Nationwide had "an obligation to do so under the terms of the policy," *id.* ¶ 30.E. If the policy obligated Nationwide to pay the $21,000 in trial costs, then the $71,000 demand may have been within the policy limits and Plaintiff has made out a claim for bad faith. Therefore, Plaintiff should be allowed to amend his complaint to the extent that he seeks to amend Count I only.

Accordingly, Plaintiff's motion to amend the complaint is GRANTED in part with respect to Count I, and is otherwise DENIED.

### C. Defendants' Motion to Dismiss

Although Plaintiff has amended the only count validly set forth in the original complaint, Defendants' Motion to Dismiss anticipated the allegations that were added in the viable amendment. Accordingly, the Motion to Dismiss is not entirely mooted by Plaintiff's amendment and should be considered.

In order to plead a bad faith claim, a plaintiff must allege that the insurance company "refus[ed] to settle a claim *within policy limits*." *Fireman's Fund Ins. Co. v. Continental Ins. Co.*, 519 A.2d 202, 204 (Md. 1987) (citing *State Farm Mut. Auto. Ins. Co. v. White*, 248 A.269

(Md. 1967) (emphasis added)).  Defendants argue that Plaintiff has failed to show "an expressed within policy limits demand," and therefore that Plaintiff has failed to plead a valid bad faith claim.  Defs.' Mot. to Dismiss ¶ 1.A.  At first glance, Defendants appear correct.  Plaintiff alleges that Alvarez's policy limit was $50,000, and that Plaintiff's best settlement offer was for $71,000.  Second Am. Compl. ¶ 22.  In fact, Plaintiff alleges that Nationwide offered to settle the case for $54,000—$4,000 *above* the policy limit.  *Id.* ¶ 23.  Neither party has pointed this Court to any case in which an insurance company was held liable for bad faith after offering to settle at, much less above, its policy limits.  *Cf. Hughes v. Progressive Direct Ins. Co., Inc.*, No. CCB-12-1555, 2012 WL 4480726, at *3 (D. Md. Sept. 27, 2012) ("'[I]n Maryland a cause of action for breach of fair dealing and good faith has been limited to claims by the insured against its insurer for failure to settle third-party liability claims for amounts *within the policy limits*." (quoting *Caruso v. Republic Ins. Co.*, 558 F. Supp. 430, 432 (D. Md. 1983) (emphasis added))).

However, in the Second Amended Complaint, Plaintiff has alleged that his $71,000 demand was actually within the limits of Alvarez's $50,000 policy.  Plaintiff appears to make three arguments to support this position: (1) that Nationwide acknowledged having the authority to settle for more than $50,000 under the policy, Pl.'s Dismissal Opp'n Mem. 4; (2) that Nationwide's agent, Jeffrey DeCaro, by stating that he believed that the $71,000 offer was fair and reasonable, admitted that the offer was within the limits of the policy, *id.* at 9-10; and (3) that the $21,000 trial costs were actually covered by the policy above and beyond the $50,000 limit, *id.* at 8.

Plaintiff's first two arguments can be dismissed out of hand.  The allegations that Nationwide "had the *authority* to pay the $21,000 in trial costs either as an expense or as a cost under the policy," Second Am. Compl. ¶ 25 (emphasis added), are immaterial to Plaintiff's

claim. Neither party alleges that the insurance policy restricted Nationwide's right to spend money as it pleased; the question is whether Nationwide was *obligated* to pay that money under the policy. *Hughes*, 2012 WL 4480726, at *3. Indeed, so long as Nationwide was obligated to pay for Alvarez's representation, there is good reason why Nationwide may have offered to settle above its policy limits in order to minimize its own legal costs. *Cf. Allstate Ins. Co. v. Campbell*, 639 A.2d 652, 658 (Md. 1994) ("[T]he duty to defend is a contractual obligation. As such, it cannot be extended beyond the terms of the contract."). Nor does DeCaro's alleged view that the $71,000 offer was fair and reasonable create an obligation for Nationwide to settle for that amount if it was over the policy limit.

The only legitimate basis for asserting that the $71,000 offer was within the policy limits is Plaintiff's assertion that the additional $21,000 constituted "trial costs," Compl. ¶ 21, that were covered by the policy above and beyond the $50,000 limit. *See* Pl.'s Dismissal Opp'n 8. Here, Plaintiff has alleged, by the narrowest of margins, a plausible ground for relief.

In the context of a motion to dismiss, this Court must act "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citations omitted). Plaintiff repeatedly has characterized the $21,000 sought above the policy limit as "costs." *See, e.g.*, Second Am. Compl. (characterizing $21,000 as "trial costs" and alleging that Nationwide had an obligation to pay such costs under the policy); *see also* Defs.' Dismissal Reply 10 ("Plaintiff has alleged . . . that the costs in question were covered under the policy."). However, Plaintiff is vague—whether purposely or inadvertently so it is not yet possible to determine—as to what he considers to be "trial costs," both under the policy and in arriving at his $21,000 calculation. $21,000.00 seems a surprisingly large amount of money as costs for a simple automobile tort case, unless rolled into that sum is a

hidden claim for attorney's fees. In the interest of minimizing undue burden and expense, and of ensuring that Plaintiff has not defeated a motion to dismiss by inadvertently misleading this Court, it is necessary to clarify the law undergirding Plaintiff's claim for relief.

"While [the court] must take the facts in the light most favorable to the plaintiff, [the court] need not accept the legal conclusions drawn from the facts." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 174, 180 (4th Cir. 2000). "Under Maryland law, '[t]he interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law.'" *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 254, 260 (4th Cir. 2005) (quoting *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 544 (Md. 2003) (alteration in original)). "Under the Maryland rule of objective contract interpretation, a court must 'give effect to the contract's plain meaning, without regard to what the parties to the contract thought it meant or intended it to mean.'" *Gresham*, 404 F.3d at 260 (quoting *Turner v. Turner*, 809 A.2d 18, 49 (Md. Ct. Spec. App. 2002)).

The insurance policy here expressly provides for payment of "costs levied against the insured." *See* Ins. Policy 1, Defs.' Mot. to Dismiss Ex. 1, ECF No. 7-2; *see also Am. Chiropractic Ass'n*, 367 F.3d at 234 (a court may consider extrinsic documents attached to the defendant's motion to dismiss if they are integral to and explicitly relied upon in the complaint). "For more than a century, '[i]t [has been] well settled in this state that the costs of a suit do not, apart from statutory direction, include the counsel fees of the successful party,' and that attorneys' fees are 'not part of the costs of the suit, in the ordinary sense.'" *C-Tech Corp. v. Aversion Techs.*, No. DKC-11-983, 2012 WL 3962508, at *5 (D. Md. Sept. 7, 2012) (quoting *Singer v. Fid. & Deposit Co. of Md.*, 54 A.63, 63 (Md. 1903) (emendations in original)); *see also Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 261 (4th Cir. 2013)

(noting under the federal costs statute that "'costs almost always amount to less than the successful litigant's total expenses'" (quoting *Taniguchi v. Kan P. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012)). Thus "costs" must be given its natural meaning and does not include attorney's fees. *See C-Tech Corp.*, 2012 WL 3962508, at *5.[12]

Plaintiff's filings repeatedly allege that the $21,000 requested above the $50,000 policy limit constituted "costs." The crux of Defendants' motion to dismiss appears to be that Plaintiff has managed to state his claim only by obfuscating the relevant facts, and that the $21,000 sought by Plaintiff actually comprised attorney's fees rather than costs. *See* Defs.' Dismissal Mem. 13-14. Although it stretches credulity to think that Plaintiff ran up $21,000 in court fees and similar recoverable expenses, Plaintiff appears to have so pleaded. "Rule 12(b)(6) does not countenance [] dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Accordingly, Defendants' motion to dismiss must be DENIED.

With respect to Plaintiff's Motion to File a Surreply to Defendants' Supplemental Memorandum in Support of Motion to Dismiss, ECF No. 28, Plaintiff has shown no reason why that motion should be granted. "[S]urreplies are disfavored in this District, and the surreply would not alter the Court's analysis." *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013). Plaintiff incorrectly claims that Defendants' argument that "a

_____

[12] Defendants also argue that "costs levied against the insured" is restricted *only* to costs actually "collect[ed] under legal authority." Defs.' Dismissal Mem. 12. Defendants do not explain why this phrase should be read more restrictively than "damages for which you are legally liable," *see* Ins. Policy 1, which even in the absence of a finding of liability may create an obligation to settle for an amount up to the policy limits. For the purposes of resolving the instant motions, I will assume, without deciding, that "costs levied against the insured" include, in the context of settlement negotiations, those costs that may be reasonably expected to be levied against the insured in the event of a verdict in favor of the plaintiff.

legal malpractice claim may not be assigned" was a "new and/or supplemental argument[]" in Defendants' reply memorandum in support of their motion to dismiss. *See* Pl.'s Surreply Mem. 1. In fact, this argument was briefed in Defendants' Opposition to Plaintiff's Motion to Remand. *See* Defs.' Remand Opp'n 16-25. Having failed to exercise his right of reply at that time, Plaintiff is not entitled to file a surreply to remedy his earlier omission. Accordingly, the motion is DENIED.

## IV.     EXPEDITED DISCOVERY ON COSTS IS REQUIRED

Although Plaintiff has pleaded the barest minimum claim sufficient to survive a motion to dismiss under Rule 12(b)(6), this Court remains concerned that the $21,000 that he has characterized as "costs" is, under well-settled Maryland law, more properly viewed as "costs and attorney's fees." To avoid undue burden and expense as this case moves beyond motions practice and into discovery, it is important to determine whether Plaintiff's claim relies on the good faith assertion of facts entitling him to relief, or merely on artfully ambiguous pleading that skirts the edges of counsel's obligations under Rule 11. To better disclose the factual basis for Plaintiff's claim, it is my opinion that limited discovery is appropriate before this case proceeds any further.

Accordingly, it is hereby ORDERED that the remaining defendants may serve up to three interrogatories, including subparts, on Plaintiff within fourteen days of this order. Those interrogatories shall not count against either party's limits under Fed. R. Civ. P. 33 or any order that subsequently may issue from this Court regarding discovery. The interrogatories will deal only with the following subjects: (1) the nature, source, and itemization of Plaintiff's $21,000 in "trial costs" and (2) any good-faith basis Plaintiff may have for believing that attorney's fees or any other expenses are "costs" under the policy. Plaintiff must respond to any interrogatories

25

within fourteen days after service and, contrary to Local Rule 104.5, shall file his responses with the Court, as well as serve them on the remaining Defendants. *See* Fed. R. Civ. P. 33(b)(2). Any objections to the interrogatories will be stated with particularity. Boilerplate objections (e.g., objections without a particularized basis, such as "overbroad, irrelevant, burdensome, not reasonably calculated to identify admissible evidence"), as well as incomplete or evasive answers, will be treated as a failure to answer pursuant to Fed. R. Civ. P. 37(a)(4). The interrogatories shall be answered in writing and under oath, under penalty of perjury, as required by Fed. R. Civ. P. 33(b)(3).

In answering these interrogatories, and in proceeding forward with this case, Plaintiff's counsel is reminded of his obligations under Rule 11 to, *inter alia*, plead only such factual contentions as have evidentiary support and such legal contentions as "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b), as well as his obligations of candor under Md. Rule of Prof'l Conduct 3.3(a)(1).[13]

Once I have reviewed the answers in the context of the holdings of this Order, I will advise counsel of how the case is to proceed further. All deadlines under Fed. R. Civ. P. 12(a)(4) shall be tolled until the completion of expedited discovery.

---

[13] Plaintiff is also reminded that the requirements of Rule 11 are more stringent than those of the comparable Maryland rule. Whereas Maryland Rule 1-311 requires a certification that a pleading or paper reflects "the best of the attorney's knowledge, information, and belief," *see* Md. Rule 1-311(b), Rule 11 requires the additional step of "an inquiry reasonable under the circumstances," *see* Fed. R. Civ. P. 11(b). Rule 81(c) suggests that counsel should be wary of the additional requirements of Rule 11 when amending a complaint or submitting other filings to this Court.

## V. CONCLUSION

For the aforementioned reasons:

Defendants' Motion to Dismiss the Complaint, ECF No. 7, is GRANTED with respect to the Attorney Defendants and the Law Office, and is otherwise DENIED without prejudice;

Plaintiff's Motion to Remand, ECF No. 11, is DENIED;

Defendants' Motion to Strike Plaintiff's Amended Complaint, ECF No. 18, is GRANTED;

Plaintiff's Motion for Leave to File Amended Complaint, ECF No. 24, is GRANTED with respect to Count I only and otherwise DENIED;

Plaintiff's Motion for Leave to File a Surreply to Defendants' Supplemental Memorandum in Support of Motion to Dismiss, ECF No. 28, is DENIED; and

Defendants' Motion for Leave to File an Amended Notice of Removal in Light of Plaintiff's Request to Amend Complaint, ECF No. 35, is DENIED as moot.

It is hereby ORDERED that expedited discovery shall take place in accordance with Part IV of this Memorandum and Order.

A separate order shall issue.

Dated: <u>October 3, 2013</u>                               <u>          /S/          </u>
                                                                    Paul W. Grimm
                                                                    United States District Judge

dsy